Rachel Mariner, Nevada Bar No. 16728
Robert Montes, CA Bar No. 159137
(*Admitted Pro Hac Vice*)
**RAFII & ASSOCIATES, P.C.**
1120 N. Town Center Dr., Suite 130
Las Vegas, Nevada 89128
Telephone: 725.245.6056
Facsimile: 725.220.1802
rachel@rafiilaw.com
robert@rafiilaw.com
*Attorneys for Plaintiff*

**RAFII & ASSOCIATES, P.C.**
EXCELLENCE | COMMITMENT | RESULTS

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

Case No.: 2:25-cv-00262-APG-EJY

**CLASS & COLLECTIVE ACTION**

NYLYNN MILES, on behalf of herself and all others similarly situated,

Plaintiff,

v.

GREYSTAR MANAGEMENT SERVICES, LP and DOES 1 through 50, inclusive,

Defendants.

**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**

1) Failure to Pay Overtime in Violation of NRS 608.018;

2) Failure to Timely Pay All Wages Due at Termination in Violation of NRS 608.020 et seq.;

3) Sexual Harassment;

4) Hostile Work Environment;

**COLLECTIVE ACTION COMPLAINT FOR:**

5) Failure to Pay Overtime in Violation of the FLSA, 29 U.S.C. § 207;

**INDIVIDUAL CLAIMS:**

6) Wrongful Constructive Termination in Violation of Public Policy (Tortious Discharge);

7) Negligent Infliction of Emotional Distress;

8) Intentional Infliction of Emotional Distress;

**LIEN REQUESTED PURSUANT TO NRS 608.050**

**DEMAND FOR JURY TRIAL**

**ARBITRATION EXEMPTIONS CLAIMED: CLASS ACTION; EFAA 9 U.S.C. §42(a)**

1

**FIRST AMENDED CLASS & COLLECTIVE ACTION COMPLAINT**

Plaintiff, Nylynn Miles, alleges as follows:

## INTRODUCTION

1. This is a class and collective action Complaint for unpaid wages and overtime, liquidated damages, attorneys' fees, costs, and interest under the Nevada Revised Statutes ("NRS"), Nevada common law and the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq.*

2. All allegations in this Complaint are based on information and belief, except for those allegations pertaining specifically to Plaintiff, which are based on Plaintiff's personal knowledge. Each allegation in this Complaint either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

## PARTIES

3. At all relevant times, Plaintiff NYLYNN MILES ("Plaintiff" or "Ms. Miles") was a natural person residing in Nevada.

4. At all relevant times, Defendant GREYSTAR MANAGEMENT SERVICES, LP ("Greystar" or "Corporate Defendant") was a foreign limited partnership registered in Charleston, South Carolina under Delaware law doing business in Nevada under NV Business ID 19991113171. At all relevant times, Greystar employed Plaintiff in Nevada.

5. The identities of Does 1-50 ("Doe Defendants") are unknown at this time, and this Complaint will be amended at such a time when Plaintiff learns of their identities.

6. "Greystar", "Corporate Defendant", and "Doe Defendants", are collectively referred to herein as "Defendants" or the "Greystar Defendants."

7. "Wage and Hour Class Members" are all current and former hourly workers employed by Defendants as Leasing Specialists or similar at any time during the period from January 7, 2021, until the date of judgment ("Class Period") (collectively, "the Rule 23 Wage & Hour Class").

8. "Sexual Harassment Class Members" are all current and former female workers employed by Defendants and all female tenants at Tesoro Ranch or other Greystar apartment complexes in Nevada who experienced harassment by Greystar employees or other known harassers during the period from January 7, 2021 until the date of judgment ("Class Period") (collectively, "the



**RAFII & ASSOCIATES, P.C.**
EXCELLENCE | COMMITMENT | RESULTS

2

**FIRST AMENDED CLASS & COLLECTIVE ACTION COMPLAINT**

Sexual Harassment Class Members").

9.      "Hostile Work Environment Class Members" are all current and former female workers employed by Defendants at Tesoro Ranch and/or other Greystar apartment complexes in Nevada who experienced harassment by Greystar employees or other known harassers during the period from January 7, 2021 until the date of judgment ("Class Period") (collectively, "the Sexual Harassment Class Members").

10.     "Collective Members" are all current and former hourly workers employed by Defendants at any time during the period from January 7, 2022, until the date of judgment ("Collective Period") who are or were hourly workers who performed overtime work.

11.     Plaintiff is informed and believes that each of the Defendants sued herein as "Doe" is responsible in some manner for the acts, omissions, or representations alleged in this Complaint, and any reference herein to "Doe," "Does," "Defendant," "Defendants," "Corporate Defendants," "Doe Defendants," "Greystar" shall mean "Defendants and each of them."

12.     At all relevant times, Defendants were covered entities and employers for purposes of Ms. Miles' claims under the FLSA and Nevada law.

## JURISDICTION AND VENUE

13.     Because Plaintiff's FLSA, Title VII and FHA claims arise under federal law, the Court has federal question jurisdiction pursuant to 28 U.S.C §1331.

14.     In addition, the Court has supplemental jurisdiction over Plaintiff's Nevada state-law claims under 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative fact regarding Defendant's unlawful treatment of Plaintiff, and form part of the same case and controversy.

15.     Venue is proper in this Court because Defendants are headquartered and operate within this judicial district, and the events and omissions giving rise to Plaintiff's claims occurred within this judicial district. See 28 U.S.C. § 1391(b).

16.     Plaintiff exhausted her administrative remedies with the Nevada Equal Rights Commission ("NERC") on January 30, 2025.

/ / /



RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

**FIRST AMENDED CLASS & COLLECTIVE ACTION COMPLAINT**

17.    Venue is proper in this Court because Defendants' acts or omissions giving rise to Plaintiff's claims occurred in Clark County.

## **FACTUAL ALLEGATIONS**

18.    Plaintiff incorporates and realleges all paragraphs above.

19.    Greystar is an international company that manages nearly 500,000 apartments across the United States and several countries. The assets under its management have a combined value in excess of $78 billion.

20.    Ms. Miles began her employment with Greystar on January 18, 2023 as a Leasing Professional at Tesoro Ranch in Henderson.

21.    Her manager was Miriam Soriento.

22.    Her job responsibilities included showing apartments to, answering questions from and running background checks on prospective tenants.

23.    She was paid $16.50 hourly.

24.    Ms. Miles' offer letter entitled "Conditional Offer of Employment" dated January 5, 2023 ("Offer Letter") promised she could be eligible for multiple bonus programs at Greystar for "successful achievement of performance goals".

25.    Ms. Miles' Offer Letter further stated that she was possibly eligible for housing benefits: either a 40% or a 20% taxable discount on her rent, and waiver of application fees, administrative fees and security deposit ("Housing Discount").

26.    This Housing Discount was part of the compensation offered to Ms. Miles.

27.    Ms. Miles lived at Tesoro Ranch and received 40% off her rent as a Housing Discount.

28.    Ms. Miles paid $1200 rent which was 60% of the listed rent on her apartment.

29.    Ms. Miles was given this Housing Discount regardless of whether she performed overtime or whether she had after hours work or whether she was on call.

30.    The mention of the Housing Discount in Ms. Miles' Offer Letter shows Greystar's intention to make the Housing Discount part of Ms. Miles' compensation rather than a reimbursement for expenses.

4

**FIRST AMENDED CLASS & COLLECTIVE ACTION COMPLAINT**

31.    Ms. Miles received other various bonuses.

32.    Ms. Miles periodically received a $50.00 bonus designated on her paycheck as "TAXMOBILEPHONE".

33.    On April 21, 2023 Ms. Miles received a $75.00 bonus.

34.    On May 5, 2023 Ms. Miles was paid for 1.42 hours of overtime. The rate at which she was paid was 1.5 times her hourly rate of $16.50.

35.    The overtime rate did not include the $50.00 bonuses, the $75.00 bonus or the housing benefit.

36.    Similarly on May 19, 2023, Ms. Miles was paid for 1.62 hours of overtime. The rate at which she was paid was 1.5 times her hourly rate of $16.50.

37.    On May 19, 2023 Ms. Miles also received a bonus of $375.00, a "TAXMOBILEPHONE" bonus of $50.00.

38.    This pattern repeats itself throughout Ms. Miles' time with Greystar, where she was paid bonuses but those bonuses were not reflected in her overtime rate.

39.    Further, her Housing Benefit was not reflected in her overtime rate.

40.    Greystar terminated Ms. Miles' employment as retribution for her complaining on her own behalf, on her female co-worker's behalf and on behalf of female tenants of frightening and pervasive sexual harassment.

41.    Ms. Miles's last day of work with Greystar was June 9, 2023.

42.    Ms. Miles received her last payment on June 16, 2023.

43.    Ms. Miles received a bonus payment on June 30, 2023.

44.    Ms. Miles received another bonus payment on July 28, 2023.

45.    Ms. Miles received a third bonus payment on August 11, 2023

46.    Ms. Miles received another bonus payment and an "FLSA Overtime" payment of $4.90 on August 25, 2023.

47.    Ms. Miles therefore did not receive all of the wages and other earned compensation owed to her immediately, pursuant to NRS 608.020.

**FIRST AMENDED CLASS & COLLECTIVE ACTION COMPLAINT**

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

48.    Ms. Miles and other women at Tesoro Ranch were constantly sexually harassed by the Company's Maintenance Technician by the name of Arnold.

49.    On a daily basis Arnold would make sexual remarks and inappropriately stare at Ms. Niles making her feel very uncomfortable.

50.    As a leasing agent Ms. Miles had the option of residing in one of the company's apartments. Ms. Miles resided in Tesoro Ranch which is a complex owned by the company.

51.    Arnold worked and also resided in the complex where Ms. Miles resided.

52.    Arnold had keys to all apartments.

53.    In one instance Arnold went to Ms. Miles unit to fix a toilet, he entered the apartment while she was asleep.

54.    Upon completing his task Arnold texted Ms. Miles "Yo, I'm not going to lie. You laying in that bed is enticing, I almost wanted to lay down with you".

55.    This advance was of course made Ms. Miles fearful for her safety both in her own apartment and in the Tesoro Ranch common areas.

56.    On another occasion, Arnold proceeded to tell Ms. Miles "Your body is so banging oh my god".

57.    His exclamation made her feel like he would not be able to control himself in her proximity.

58.    Arnold already had a reputation of harassing multiple women in the complex and he was stalking, in particular, a woman named Kylie.

59.    In May of 2023, a male relative of Kylie caught Arnold standing underneath her balcony attempting to spy on her and the other female tenant in the apartment.

60.    The tenant Kylie reached out to Ms. Miles to complain about Arnold's conduct.

61.    Ms. Miles complained to her supervisor and commiserated with Kylie about the pervasive harassment.

62.    Ms. Miles had complained about Arnold's behavior to all of her coworkers and managers at Tesoro Ranch but no action was ever taken.



RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

**FIRST AMENDED CLASS & COLLECTIVE ACTION COMPLAINT**

63.    Kylie, as well as Ms. Miles, continued to voice their frustration to the property manager however no action was taken by the company.

64.    In response, Greystar terminated Ms. Miles' employment and evicted her from her subsidized housing.

65.    Ms. Miles was not only the victim of sexual harassment unprevented by Defendants even after repeated warnings, she was wrongfully terminated and retaliated for complaining about Arnold's sexual harassment.

66.    The company allowed Arnold to harass multiple young female employees and tenants for the duration of his employment with the company.

67.    Greystar owed a duty of care to both Ms. Miles and to Kylie to immediately address sexual harassment under the Fair Housing Act and Title VII.

68.    Ms. Miles was terminated for standing up for herself as well as for other victims of Arnold's sexual harassment.

69.    Ms. Miles last day of work was June 9, 2024. She was wrongfully accused of disclosing Arnold's residence to a member of the Sexual Harassment Class.

70.    Ms. Miles denies this accusation.

71.    The true reason that Ms. Miles's employment was terminated was in retaliation for her complaints about Arnold.

72.    Ms. Miles was hard worker and a productive employee.

73.    Throughout the stent of her employment, she was never written up or had any complaints about her work but the company proceed to terminate her anyway.

74.    Throughout her employment with the Company, Arnold subjected Ms. Miles and other females at Tesoro Ranch to an intimidating and hostile work environment permeated by unwelcome conduct of a sexual nature.

75.    Arnold consistently made sexual comments to Ms. Miles.

76.    The harassment continued even after Ms. Miles expressed to the Property Manager as well as other coworkers that she was uncomfortable with Arnold's comments and actions.

**FIRST AMENDED CLASS & COLLECTIVE ACTION COMPLAINT**

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

77.    Defendant is vicariously liable for Arnold's harassment and actions against the women he abused.

78.    Defendant knew or should have known that Arnold was harassing women at Tesoro Ranch.

79.    Defendant exercised no care to prevent sexual harassment from occurring.

80.    Defendant did nothing to prevent or correct any sexually harassing behavior.

81.    The acts committed against Ms. Miles and the class are textbook examples of sexual harassment, and as a result Ms. Miles and the class she represents will be able to recover her economic damages, general damages, punitive damages, and attorney fees.

82.    Ms. Miles was constructively discharged.

83.    Arnold's unwelcome, severe, and pervasive sexual advances created work conditions so intolerable that any reasonable person in Ms. Miles's position would have no reasonable alternative except to quit.

84.    Ms. Miles was evicted from her home for her efforts to report the harassment and hostile work environment.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

85.    Plaintiff incorporates and realleges all paragraphs above.

86.    Plaintiff brings this action on behalf of herself and on behalf of all other similarly-situated current and former employees of Defendants (collectively, the "Similarly-Situated Employees").

87.    Plaintiff brings the Sexual Harassment claim on on behalf of all other similarly-situated current and former female residents of Tesoro Ranch and employees of Tesoro Ranch ("Similarly-Situated Women").

88.    At all relevant times, Plaintiff and each of the Similarly-Situated Employees was an "employee" within the meaning of the FLSA and Nevada law. *See* NRS 608.010; Nev. Const. Art. XV § 16(8)(b); 20 U.S.C. § 203 (e), (g).

89.    At all relevant times, Defendant was an "employer" of Plaintiff and Similarly-Situated

**FIRST AMENDED CLASS & COLLECTIVE ACTION COMPLAINT**

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

Employees within the meaning of the FLSA and Nevada law. *See* NRS 608.011; Nev. Const. Art. XV § 16(8)(b); 20 U.S.C. § 203 (d)(g).

90.  At all relevant times, Defendant owed women living and working at Tesoro Ranch a duty of care to prevent or address sexual harassment under the FHA.

91.  At all relevant times, Defendants owed women working for them a duty of care to alleviate a hostile work environment under Title VII.

92.  At all relevant times, Defendants did not pay overtime in the amount of 1 and ½ the Plaintiff's and Similarly-Situated Employees' "regular wage rate" because Defendants did not include bonuses and Housing Discounts in the regular wage rate.

93.  This failure to pay overtime at the correct amount was an intentional decision.

94.  At all relevant times, Defendants did not pay all wages due and owing within the time mandated by Nevada State law and therefore owe Plaintiff and Similarly-Situated employees the "Waiting Time Penalty".

95.  Plaintiff brings this action as both a class action under Federal Rule of Civil Procedure 23 and an FLSA collective action pursuant to 29 U.S.C. §216(b).

96.  Plaintiff brings her Rule 23 class action on behalf of the following class members grouped into four overlapping classes:

    a.  The first class (hereinafter "Overtime Class") is defined as:

    **All non-exempt workers working onsite on a Greystar property who were paid both bonuses, and/or housing benefit and performed overtime while employed by Defendants at any time during the two-year period (the "Class Period") prior to the filing of the original complaint until the entry of judgment after trial.**

    b.  The second class (hereinafter the "Nevada Class") is defined as:

    **All members of the Overtime Class who are resident in Nevada and who are former employees of Defendant.**

    c.  The third class, the Sexual Harassment is defined as:

**FIRST AMENDED CLASS & COLLECTIVE ACTION COMPLAINT**

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

**All women who lived or worked at Tesoro Ranch who experienced sexual harassment during the Class Period**

    d.  The fourth class, the Hostile Work Environment is defined as:

**All women who worked at Tesoro Ranch who experienced a hostile work environment during the Class Period**

97.    Plaintiff reserves the right to modify or redefine the Overtime and Nevada Classes, and the Sexual Harassment and the Hostile Work Environment Classes and to add subclasses as appropriate based on further investigation, discovery, and theories of liability.

98.    Plaintiff brings her FLSA collective action on behalf of the following **FLSA Collective Members** (hereinafter "Collective Members" or the "FLSA Collective") defined as:

**All non-exempt workers employed by Defendants who received a housing benefit and/or bonus and performed overtime at any time during the three-year period (the "FLSA Period") prior to the filing of the original complaint until the entry of judgement after trial.**

99.    Plaintiff reserves the right to modify or redefine the FLSA Collective and to add subclasses as appropriate based on further investigation, discovery, and theories of liability.

100.    The Overtime Class, the Nevada Class, the Sexual Harassment Class, the Hostile Work Environment Class and the FLSA Collective overlap such that members of the Overtime Class may be members of the Nevada Class, and vice versa. Plaintiff is a member of the Overtime Class, the Nevada Class, the Sexual Harassment class, the Hostile Work Environment Class and the FLSA Collective.

## <u>OVERTIME, NEVADA, SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT CLASS ALLEGATIONS</u>

101.    Plaintiff incorporates and realleges all paragraphs above.

102.    Class treatment of the Overtime, Nevada, Sexual Harassment- Discrimination and Hostile Work Environment - Harassment Classes is appropriate for the following reasons:

A.    ***Numerosity***:  Class Members are so numerous that joinder would be impractical, and the disposition of their claims on a class (rather than individual) basis will conserve resources of the

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS



**FIRST AMENDED CLASS & COLLECTIVE ACTION COMPLAINT**

parties and judicial system.  While the number of Class Members is unknown at this time, this information can be readily ascertained from Defendants' business records.

i.    Upon information and belief, Defendants employ, or have employed, over 200 Class Members of the Overtime and Nevada classes during the Class Period. All employees at all of Defendants' 45 apartment complexes in Clark County are putative class members of the Overtime and Nevada classes.

ii.   Upon information and belief, there are 400 apartments at Defendants' Tesoro Ranch facility where similarly-situated women have or do reside, and further female employees, yielding a class of over thirty Class Members for the Sexual Harassment Class.

iii.  Upon information and belief, there are or were during the Class Period at least twenty female Lease Specialists or similar working for Defendants during the Class Period, yielding a class of over twenty Class Members for the Hostile Work Environment Class.

B.    ***Commonality***:  Common questions of law and fact exist and predominate as to Plaintiff and Class Members, including, but not limited to:

i.    Whether Plaintiff and each Class Member was an "employee" within the meaning of Nevada law;

ii.   Whether each Defendant was an "employer" within the meaning of Nevada law;

iii.  Whether Defendants failed to pay Plaintiff and Class Members overtime compensation for each overtime hour worked at one and one-half time their 'regular wage rate', including bonus pay and housing benefit;

iv.   Whether Defendants failed to make payment to its former employees of all wages due and owing and therefore owe the Nevada Class the Waiting Time Penalty; and

v.    Whether any wage violation by Defendants was willful or reckless.

vi.   Whether the Defendants allowed sexual harassment of female tenants and employees.

vii.  Whether the Defendants maintained, despite complaints, a hostile work environment

**FIRST AMENDED CLASS & COLLECTIVE ACTION COMPLAINT**

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

1    for the Hostile Work Environment Class.

2    C.    **Typicality**:  Plaintiff's claims are typical of the claims of Class Members because

3    Plaintiff and Class Members were subject to the same policy and practices of Defendants during the

4    Class Period, and each sustained damages.  Proof of a common or single state of facts will therefore

5    establish the right of a majority of Class Members to recover.

6    D.    **Adequacy**:  Plaintiff will fairly and adequately represent the interests of Class

7    Members because Plaintiff herself is a Class Member of the four classes defined herein and has the

8    same legal and factual issues as Class Members and has no interests antagonistic to Class Members.

9    Plaintiff has retained legal counsel competent and experienced in class actions, including labor and

10   employment litigation.  Plaintiff and her counsel are aware of their fiduciary responsibilities to Class

11   Members and are determined to discharge those duties diligently by vigorously seeking the maximum

12   possible recovery for Class Members.

13   E.    **Superiority**:  A class action is superior to other available means for the fair and efficient

14   adjudication of this controversy.  Each member of the Overtime Class, Nevada Class, Sexual

15   Harassment Class and Hostile Work Environment Class has been damaged and is entitled to recovery

16   by reason of Defendants' failure to compensate nonexempt workers for overtime at the proper rate of

17   pay and by reason of Defendants' maintaining an atmosphere of sexual harassment of women at

18   Tesoro Ranch Apartments and creation of a hostile work environment toward female employees at

19   Tesoro Ranch. Class action treatment will permit a large number of similarly-situated persons to

20   prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary

21   duplication of effort and expense. Furthermore, the prosecution of individual lawsuits by each Class

22   Member would present the risk of inconsistent and contradictory judgments, along with the potential

23   for establishing inconsistent standards of conduct for Defendants and other employers.  Consequently,

24   an important public interest will be served by addressing this matter as a class action.

25                          **FLSA COLLECTIVE ALLEGATIONS**

26   103.    Plaintiff incorporates and realleges all paragraphs above.

27   104.    With regard to conditional certification of the FLSA Collective, Plaintiff is similarly

**FIRST AMENDED CLASS & COLLECTIVE ACTION COMPLAINT**

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

situated to those Collective Members she seeks to represent based on the same factors of commonality, typicality, and adequacy enumerated above.

105.    Plaintiff estimates that Defendants employ or have employed hundreds of Leasing Professionals or other on-site hourly workers at their properties in Nevada.

106.    The proposed FLSA Collective should be readily ascertainable by examining employment records that Defendant is required to maintain by law, including hiring documents, work reports, time records, payroll records, tax records, company policies and directives.

107.    For purposes of providing notice to the FLSA Collective, the names, addresses, email addresses, and phone numbers of putative FLSA Collective Members should be readily available from Defendant.

108.    Timely notice of the pendency of this collective action ("Notice") along with a consent to join form ("Consent Form") – subject to Court approval – can be provided to FLSA Collective Members by mail or email, as well as by posting and distributing copies of the Notice and Consent Form at Greystar Properties.

109.    Plaintiff estimates that more than one hundred (100) putative FLSA Collective Members will sign and file Consent Forms to join this FLSA Collective Action.

110.    Plaintiff and Collective Members are entitled to damages in the amount of their respective unpaid wages, including minimum wages, unpaid overtime compensation, and liquidated damages as provided by the FLSA.  (*See* 29 U.S.C. § 206, 207(a), 216(b).)

111.    Plaintiff hereby consents to sue for violations of the FLSA and become a member of the FLSA Collective.  (*See* 29 U.S.C. §§ 216(b), 256.)  Plaintiff's consent to sue is attached hereto as **Exhibit A**.

### FIRST CAUSE OF ACTION

### Failure to Pay Overtime in Violation of NRS 608.018

### (On Behalf of Plaintiff and the Overtime Class)

112.    Plaintiff incorporates and realleges all paragraphs above.

113.    NRS 608.140 provides that an employee has a private right of action for unpaid wages.

**FIRST AMENDED CLASS & COLLECTIVE ACTION COMPLAINT**

114.    NRS 608.018(2) provides that "An employer shall pay 1 ½ times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate not less than 1 ½ times the minimum rate prescribed pursuant to NRS 608.250 works more than 40 hours in any scheduled workweek."

115.    The regular rate of pay for Plaintiffs and Class Members should be based on all compensation and remuneration received by Plaintiffs and Class Members within a given pay period, including Bonus Pay.

116.    The regular rate of pay for Plaintiffs and Class Members should be based on all compensation and remuneration received by Plaintiffs and Class Members within a given pay period, including Housing Benefit.

117.    Here, Plaintiffs and Class Members worked over 40 hours per workweek without being paid overtime at the correct overtime rate.

118.    Wherefore, Plaintiffs and Class Members demand payment by Defendants at one and one-half times their "regular rate" of pay for all hours worked in excess of 40 hours a workweek during the Class Period, together with Attorney's fees, costs, and interest as provided by law.

## SECOND CAUSE OF ACTION
### Failure to Timely Pay All Wages Due at Termination in Violation of NRS 608.020, 608.018, 608.040 and 608.050
**(On Behalf of Plaintiff and the Nevada Class)**

119.    Plaintiff incorporates and realleges all paragraphs above.

120.    NRS 608.020 provides that "[w]henever an employer discharges an employee, the wages and compensation earned and unpaid at the time of such discharge shall become due and payable immediately."

121.    NRS 608.030 similarly provides that an employee who resigns or quits must be paid within seven days or on the next regular payroll date, whichever earlier occurs.

122.    NRS 608.040(1) states that "Within 3 days after the wages or compensation of a discharged employee becomes due; or…[o]n the day the wages or compensation is due to an employee who resigns or quits, the wages or compensation of the employee continues at the same rate from the

14

**FIRST AMENDED CLASS & COLLECTIVE ACTION COMPLAINT**

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

day the employee resigned, quit, or was discharged until paid for 30 days, whichever is less."

123.    NRS 608.050 grants a "lien" to every employee separated from employment for the purpose of collecting any wages or compensation due and owing, including up to 30 additional days of compensation "without rendering any service therefor."

124.    Here, by failing to compensate Plaintiffs and Class Members separated from employment for all overtime hours worked as hereinabove provided, Defendants have failed to timely remit all wages due and owing to Plaintiffs and those Class Members.

125.    Wherefore, Plaintiffs and Class Members separated from Defendants' employment demand 30 days of wages and an "employee lien" pursuant to NRS 608.040 and NRS 608.050, together with attorney's fees, costs, and interest as provided by law.  Plaintiffs and Class Members also claim a private cause of action to foreclose a lien against Defendants, if necessary, to collect wages due pursuant to NRS 608.050.

126.     Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

127.    NRS 608.020 provides that "[w]henever an employer discharges an employee, the wages and compensation earned and unpaid at the time of such discharge shall become due and payable immediately."

128.    NRS 608.040(1)(a-b), in relevant part, states that "Within 3 days after the wages or compensation of a discharged employee becomes due; or on the day the wages or compensation is due to an employee who resigns or quits, the wages or compensation of the employee continues at the same rate from the day the employee resigned, quit, or was discharged until paid for 30-days, whichever is less."

129.    NRS 608.050 grants an "employee lien" to each discharged or laid-off employee for the purpose of collecting the wages or compensation owed to them "in the sum agreed upon in the contract of employment for each day the employer is in default, until the employee is paid in full, without rendering any service therefor; but the employee shall cease to draw such wages or salary 30 days after such default."

**FIRST AMENDED CLASS & COLLECTIVE ACTION COMPLAINT**

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

130.   By failing to pay Plaintiff and Nevada Class Members all the wages owed for all their actual hours worked and overtime hours worked as hereinabove provided, Defendants have failed to timely remit all wages due and owing to Plaintiff and Nevada Class Members.

131.   Despite demand, Defendants willfully refuse and continue to refuse to pay Plaintiff and Nevada Class Members all the wages that were due and owing upon the termination of their employment.

132.   WHEREFORE, Plaintiff and Nevada Class Members demand thirty (30) days of waiting penalties under NRS 608.040 and NRS 608.140, and thirty (30) days of pay as waiting penalties under NRS 608.050 and 608.140, together with Attorneys' fees, costs, and interest as provided by law.

<u>**THIRD CAUSE OF ACTION**</u>

<u>**Sexual Discrimination in violation of the FHA**</u>

<u>**(on behalf of Plaintiff and Sexual Discrimination Class)**</u>

133.   Plaintiff incorporates and realleges all paragraphs above.

134.   Defendants owe all women tenants of their forty-five Clark County properties a duty of care to prevent discrimination based on sex.

135.   Nevada Courts apply Title VII discrimination analysis in examining Fair Housing Act Discrimination Claims.

136.   Here, Defendants unlawfully discriminated against Plaintiff and the Sexual Discrimination Class by allowing Arnold to trespass, leer, assault and threaten women with sexual contact.

137.   Defendants acted intentionally, with malice, fraud, or oppression, in discriminating against Plaintiff and the Sexual Harassment Class because of their sex.

138.   As a result of Defendants' wrongful actions, Plaintiff and the Sexual Harassment Class has sustained significant general and special damages to be proven at trial. Plaintiff seeks all damages and remedies available to her under law including, but not necessarily limited to, compensatory, consequential, and punitive damages, attorneys' fees, costs, and interest.

16

**FIRST AMENDED CLASS & COLLECTIVE ACTION COMPLAINT**

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS



### **FOURTH CAUSE OF ACTION**

### **Hostile Work Environment Harassment**

### **(on behalf of Plaintiff and Hostile Work Environment Class)**

139.    Plaintiff incorporates and realleges all paragraphs above.

140.    Nevada law prohibits discrimination against an employee based on her sex. Specifically, "it is an unlawful employment practice for an employer: (a) To fail or refuse to hire or to discharge any person, or otherwise to discriminate against any person with respect to the person's compensation, terms, conditions or privileges of employment, because of his or her . . . sex . . . or (b) To limit, segregate or classify an employee in a way which would deprive or tend to deprive the employee of employment opportunities or otherwise adversely affect his or her status as an employee, because of his or her . . . sex." NRS 613.330(1).

141.    Here, Defendants unlawfully discriminated against Plaintiff with respect to the terms and conditions, and privileges of her employment because of her sex. Plaintiff was subject to different terms and conditions of employment than her male counterparts.

142.    Defendants also discriminated against Plaintiff by constructively terminating her because of Arnold's misconduct. Defendants thereby ratified, condoned, and failed to take any corrective action against the harassing and discriminatory conduct directed toward Plaintiff.

143.    Defendants acted intentionally, with malice, fraud, or oppression, in discriminating against Plaintiff because of her sex.

144.    As a result of Defendants' wrongful actions, Plaintiff has sustained significant general and special damages to be proven at trial. Plaintiff seeks all damages and remedies available to her under law including, but not necessarily limited to, compensatory, consequential, and punitive damages, attorneys' fees, costs, and interest.

### **FIFTH CAUSE OF ACTION**

### **Failure to Pay Overtime in Violation of the FLSA, 29 U.S.C § 207**

### **(On Behalf of Plaintiff and the FLSA Collective)**

145.    Plaintiff incorporates and realleges all paragraphs above.

17

**FIRST AMENDED CLASS & COLLECTIVE ACTION COMPLAINT**

146.    The FLSA provides that "[N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C § 207(a)(1).

147.    "Regular rate" includes bonuses and housing benefits intended as compensation.

148.    Here, at all relevant times, Defendants failed to pay one and one-half times the applicable regular rate of pay for all hours worked over 40 by Plaintiffs and Collective Members in any given workweek.

149.    Defendants' failure to pay overtime to Plaintiff and Collective Members has been a willful violation of the FLSA.  Defendants knew, or should have known that their payroll policies and practices were unlawful.

150.    Wherefore, Plaintiff and Collective Members demand payment by Defendants at one and one-half times their regular rate of pay for all hours worked in excess of 40 hours a week during the FLSA Period, plus an additional equal amount as liquidated damages, together with Attorney's fees, costs, and interest as provided by law.

### **FIFTH CAUSE OF ACTION**

### **Wrongful Constructive Termination In Violation of Public Policy**

151.    Plaintiff incorporates and realleges all paragraphs above.

152.    Defendant's actions and/or omissions, as alleged above, are contrary to substantial and fundamental public policies delineated in both state and federal laws, including Nevada's EEO Laws and Title VII of the Civil Rights Act. These state and federal laws articulate substantial and fundamental public policies in favor of a workplace environment free from discrimination, harassment and retaliation based on sex, including the freedom to report discrimination and harassment.

153.    Here, Defendant's decision to terminate Plaintiff was unlawful, tortious, and contrary to the public policies of Nevada and the United States. Defendants acted intentionally, with malice,

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

fraud, or oppression, in terminating Plaintiff in order to silence her pointing out the sexual harassment ongoing at Tesoro Ranch.

154.    As a result of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer loss of earnings and benefits, damage to her reputation and career, and severe anguish and emotional distress.

155.    Plaintiff seeks all damages and remedies available to her under law including, but not limited to, compensatory, consequential, and punitive damages, as well as attorneys' fees, costs, and interest.

## SIXTH CAUSE OF ACTION

### Negligent Infliction of Emotional Distress

156.    Plaintiff incorporates and realleges all paragraphs above.

157.    As Plaintiff's employer, Defendants owed a duty of care to Plaintiff.

158.    At the very least, Defendants owed a duty of care to Plaintiff not to harass her, discriminate against her, retaliate against her or terminate her in violation of state or federal law or public policy, and not to evict her for a pretextual reason.

159.    By engaging in the conduct alleged above, and/or by allowing that conduct to continue, Defendants breached the duty of care that was owed to Plaintiff.

160.    Defendant's discriminatory and otherwise unlawful conduct was not only violative of Plaintiffs' rights; it also dealt detrimental blows to her well-being, mental stability, and peace of mind.

161.    As a result of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer anguish and emotional distress.

162.    Plaintiff seeks all damages and remedies available to her under law including, but not limited to, compensatory, consequential, and punitive damages, as well as attorneys' fees, costs, and interest.

## SEVENTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

163.    Plaintiff incorporates and realleges all paragraphs above.



RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

**FIRST AMENDED CLASS & COLLECTIVE ACTION COMPLAINT**

164.    Defendant's discriminatory and otherwise unlawful conduct was not only violative of Plaintiff's rights; it also dealt detrimental blows to her well-being, mental stability, and peace of mind. Defendant acted intentionally, with malice, fraud, or oppression towards Plaintiff during her employment, including in her unlawful termination.

165.    As a result of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer severe anguish and emotional distress.

166.    Plaintiff seeks all damages and remedies available to her under law including, but not limited to, compensatory, consequential, and punitive damages, as well as attorneys' fees, costs, and interest.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiffs, individually and on behalf of Class and Collective Members and all others similarly situated, prays for relief as follows:

1.    For an order certifying this action as a class action under FRCP 23 on behalf of the Overtime Class, the Nevada Class, the Sexual Harassment Class and the Hostile Work Environment Class;

2.    For an order conditionally certifying this action as a collective action under the FLSA on behalf of the Collective Class;

3.    For an order appointing Plaintiff as representatives and her counsel as class counsel for the Overtime Class, Nevada Class, Sexual Harassment Class, Hostile Work Environment Class and the FLSA Collective;

4.    For compensatory damages, including front pay, back pay, lost wages and benefits, out-of-pocket costs and expenses, emotional distress damages, punitive damages as well as other special and general damages according to proof;

5.    For damages according to proof of the regular rate of pay under the applicable state or federal law for all hours worked;

6.    For damages according to proof of overtime compensation at one and one-half the regular rate of pay under applicable state or federal law for all hours worked over 40 in a week;



RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

**FIRST AMENDED CLASS & COLLECTIVE ACTION COMPLAINT**

7.    For liquidated damages pursuant to 29 U.S.C. § 216(b);

8.    For 30 days of wages pursuant to NRS 608.040 and 608.050;

9.    For interest as provided by law at the maximum legal rate;

10.    For reasonable attorneys' fees authorized by statute, common law, or equity;

11.    For costs of suit incurred herein;

12.    For pre-judgment and post-judgment interest at the maximum legal rate;

13.    For exemption from the Nevada Arbitration Rules pursuant to NAR 3 and 5; and

14.    For such other relief as the Court may deem just and proper.


DATED: March 7, 2025                              **RAFII & ASSOCIATES, P.C.**

                                                  */s/* Rachel Mariner_____
                                                  Rachel Mariner
                                                  *Attorney for Plaintiff*



RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

**FIRST AMENDED CLASS & COLLECTIVE ACTION COMPLAINT**

**CERTIFICATE OF SERVICE**

I hereby certify that on  March 7, 2025, I caused service of a true and correct copy of the foregoing **PLAINTIFF'S FIRST AMENDED CLASS & COLLECTIVE ACTION COMPLAINT** to be made by the CM/ECF E-File and Serve System upon all parties registered to use this service, and listed as service recipients herein:


Shawn D. Fabian, Esq.
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
321 N. Clark Street, 32nd Floor
Chicago, Illinois 60654
sfabian@sheppardmullin.com

Zachary P. Takos, Esq.
TAKOS LAW GROUP, LTD.
10785 West Twain Avenue, Suite 224
Las Vegas, NV 89135
zach@takoslaw.com


                                                        /s/ Marcus Johnson

                                                        An employee of RAFII & ASSOCIATES, P.C.

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

22

**FIRST AMENDED CLASS & COLLECTIVE ACTION COMPLAINT**