**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

NYLYNN MILES,

    Plaintiff

v.

GREYSTAR MANAGEMENT SERVICES, LLC,

    Defendant

Case No.: 2:25-cv-00262-APG-EJY

**Order (1) Granting in Part Greystar's Motion to Dismiss, (2) Denying Greystar's Motion to Compel Arbitration, (3) Ordering Supplemental Briefing, (4) Denying Greystar's Motion to Strike Class Allegations, and (5) Denying Greystar's Motion to Strike the Declaration of Rachel Mariner**

[ECF Nos. 41, 46]

Nylynn Miles sues Greystar Management Services, LLC, an international apartment management company, for claims arising out of her employment as a leasing agent at one of its Las Vegas properties. She brings several wage and hour claims for failure to pay overtime in violation of Nevada Revised Statutes (NRS) § 608.018 (claim one) and failure to timely pay all wages due at termination under NRS § 608.020 (claim two) on behalf of herself and a class of similarly situated employees, as well as an individual and collective claim for failure to pay overtime per the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207 (claim three). Miles also brings individual claims for sex discrimination under NRS § 613.330 (claim four), retaliation in violation of NRS § 613.340 and 42 U.S.C. § 2000e et seq (Title VII) (claim five), negligent supervision (claim six), wrongful termination (claim seven), hostile work environment (claim eight), and intentional infliction of emotional distress (IIED) (claim nine).

Greystar moves to compel arbitration of Miles' wage and hour claims under the Federal Arbitration Act (FAA) and to dismiss the remaining claims (claims four through nine). Greystar

also moves to strike the class allegations under Federal Rule of Civil Procedure 12(f).[1] Miles opposes arbitration, arguing her case falls within the ambit of the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act (EFAA), 9 U.S.C. §§ 401-402, and thus she cannot be forced to arbitrate. She also opposes dismissal of claims four through nine and striking her class allegations. Greystar also moves to strike the declaration of Miles' attorney attached to her opposition to Greystar's motion to dismiss.

I grant Greystar's motion to dismiss the negligent supervision, wrongful termination, and IIED claims. I also grant Miles leave to amend if she can allege facts to do so. I deny Greystar's motion to compel arbitration because the EFAA protects Miles' entire case from arbitration. However, I am ordering supplemental briefing on whether Miles may proceed with a joint action that does not allege a sexual harassment dispute. I also deny Greystar's motions to strike the class allegations and the declaration of Miles' attorney.

**I. BACKGROUND**

Miles alleges the following facts, which I accept as true when resolving the motion to dismiss. Miles worked for Greystar from January 18, 2023 until her termination on June 9, 2023. ECF No. 37 at 4, 10. Her job as a Greystar leasing professional included helping applicants through the lease application process, showing apartments, performing background checks on applicants, and walking through apartments with tenants on move-in day and coordinating with maintenance for needed repairs. *Id.* at 4, 6.

Greystar paid Miles an hourly rate. *Id.* at 4. She also received a discount on Greystar housing and a bonus for every lease she guided through the application process. *Id.* Miles

---

[1] Because Greystar is requesting several types of relief, it should have filed separate motions. Local Rule IC 2-2(b). Nevertheless, I will consider the entirety of Greystar's motion, including its requests to compel arbitration, dismiss, and strike.

alleges she received several specific bonus payments throughout her employment.  For some of these payments, she lists the specific amount she received and explains they were designated on her paycheck as "TAXMOBILEPHONE." *Id.* at 4-5.  For others, she only provides the amount of money she received or the date she received the bonus without disclosing the reason. *Id.* at 5.

Shortly after she started working for Greystar, Miles began having problems with a maintenance technician, Arnold Little.  Like Miles, Little also lived at the Greystar property where they both worked, Tesoro Ranch. *Id.* at 4, 6.  Miles alleges Little "developed a reputation of making comments about women's bodies" and told her "she looked 'very nice' in the dress she was wearing" on February 8, 2023. *Id.* at 7.  The comment, along with his "lingering and lascivious stares" made Miles uncomfortable, so she "went straight" to Greystar's office and complained about Little to her supervisors at the time, Miriam Soriento and Ariana Malachi. *Id.* at 6, 7.  She told them that "she did not feel safe around Arnold, she felt harassed by the way he looked at her and she did not want to work with him." *Id.* at 7.

Little's next comment to Miles came in March.  He "thanked [her] for the good view while at work" and said, "Your body is so banging, OMG" while staring at her buttocks. *Id.* (quotation omitted).  Miles again raised concerns about Little to Soriento and Malachi, specifically telling them "she didn't want Arnold Little to be in her apartment." *Id.*  Because Miles feared Little, she asked her supervisors not to discuss the issues with Arnold but "to keep him away from her." *Id.*

In April 2023, another tenant "caught [Little] standing underneath his balcony attempting to spy on his daughter, Kylie." *Id.* at 8.  Miles alleges Little stole Kylie's apartment number and phone number from a work order and called her. *Id.*  Kylie came to Greystar's leasing office to report these incidents, and Miles took the report. *Id.*  Miles then relayed the report to her

supervisors, Malachi and Kiara Bettis, a new property manager. *Id.* at 6, 8.  Kylie "started coming to the office frequently," repeating her concerns about feeling unsafe around Little. *Id.* at 8.  Miles claims "Malachi and Bettis mocked Kylie," stonewalled Kylie's inquiries about Little, and did not discipline Little "for stealing Kylie's apartment number and phone number from a work order." *Id.*

On May 12, 2023, Little entered Miles' apartment without her knowledge. *Id.*  Malachi and Bettis "ordered [Little] to Ms. Miles' apartment to fix a toilet." *Id.* at 9.  Miles and her children were asleep and did not hear any knocking. *Id.*  As a maintenance technician, Little had keys to all the apartments at Tesoro Ranch. *Id.* at 7.  He entered Miles' apartment while she slept and later texted her, "Yo, I'm not going to lie.  You laying in that bed is enticing, I almost wanted to lay down with you." *Id.* at 9 (quotation omitted).  Miles "complained again to Bettis and Malachi," but "did not show them the specific text because she feared retribution." *Id.*

Miles claims Bettis and Malachi had enough of her complaints and devised a plan to fire her.  During a staff meeting, the property managers "chastised" Miles for divulging an employee's personal information by telling Kylie that Little lived onsite at Tesoro Ranch. *Id.* at 9-10.  Miles denied doing so and found this explanation pretextual because "[i]t was generally known at Tesoro that [Little] lived on site." *Id.* at 10.  It was also possible that Little told Kylie himself during their phone call. *Id.*  Miles was terminated a few days later on June 9, 2023. *Id.*

Miles claims there was no investigation, no warning on her file, no write-up, and no opportunity for her to make a statement. *Id.*  She asked "Bettis and Malachi for Greystar Human Resources' telephone number on several occasions," but was told they did not have that information. *Id.* at 10-11.  Miles contacted Laura Dobslaw-Heetland, the Senior Director of Real Estate, who told Miles "that Greystar 'was never officially notified' of Ms. Miles' reports of

sexual harassment by Arnold Little." *Id.* at 11.  Little remained employed at Tesoro Ranch. *Id.* at 10-11.

## II.  ANALYSIS

### A.  I grant Greystar's motion to dismiss in part.

In considering a motion to dismiss, I take all well-pleaded allegations of material fact as true and construe the allegations in a light most favorable to the non-moving party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).  However, I do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017) (quotation omitted).  A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

If dismissal is granted, leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2).  Leave to amend should be granted unless there is a reason not to, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis,* 371 U.S. 178, 182 (1962).  Generally, "dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment." *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1118 (9th Cir. 2013) (quotation omitted).

#### 1.  I deny Greystar's motion to dismiss Miles' sex discrimination claim.

In Nevada, it is unlawful for an employer to "discriminate against any person with respect to the person's compensation, terms, conditions or privileges of employment, because of

his or her . . . sex." NRS § 613.330(1)(a).  Discrimination claims brought under NRS § 613.330 are analyzed under the same principles as Title VII discrimination claims. *Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005).  The statutory language "giv[es] rise to at least three types of sex discrimination claims: disparate treatment (adverse employment actions motivated by sex); quid pro quo sexual harassment (conditioning employment benefits on submission to sexual advances); and hostile work environment harassment (unwelcome sexual advances so severe as to alter the terms and conditions of employment)." *Maner v. Dignity Health*, 9 F.4th 1114, 1120 (9th Cir. 2021).

Miles' sex discrimination claim (claim four) appears to be based on a disparate treatment theory. *See* ECF No. 37 at 21 ("Plaintiff was subject to different terms and conditions of employment than her male counterparts . . . .").  Separately, she pleads a hostile work environment claim (claim eight).  Greystar agrees these are "distinct causes of action and must be pled separately." ECF No. 45 at 5-6.  Miles' complaint and opposition at times confuse her disparate treatment and hostile work environment claims. *See* ECF No. 37 at 20 (styling claim four as "Sex Harassment Discrimination"); ECF No. 44 at 8 ("Sexual harassment is a kind of sexual discrimination . . . .").  Nevertheless, I will analyze Miles' fourth cause of action as a disparate treatment sex discrimination claim and address her hostile work environment theory as claim eight below.

Greystar argues Miles' disparate treatment sex discrimination claim fails because she does not allege discriminatory intent.  But she does not need to.  To establish a prima facie case of disparate treatment, a plaintiff must plausibly allege:

> (1) that the plaintiff belongs to a class of persons protected by [NRS § 613.330]; (2) that the plaintiff performed his or her job satisfactorily; (3) that the plaintiff suffered an adverse employment action; and (4) that the

plaintiff's employer treated the plaintiff differently than a similarly situated employee who does not belong to the same protected class as the plaintiff.

*Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  None of these elements requires Miles to allege discriminatory intent, and it is unclear why Greystar cites law under the Fair Housing Act when Miles' claim is brought under NRS § 613.330, which is an employment action analyzed under Title VII.  Greystar offers no other basis for dismissal besides its argument that Miles has not alleged discriminatory intent.[2]  I therefore deny Greystar's motion to dismiss the sex discrimination claim.

### 2.  I deny the motion to dismiss Miles' retaliation claim.

Greystar argues Miles' retaliation claim must be dismissed because she fails to allege she engaged in a protected activity or a causal nexus between any protected activity and her termination.  Miles contends that her complaints to Soriento, Malachi, and Bettis were protected activities and that she sufficiently pleaded a causal nexus.

Title VII prohibits employers from discriminating against employees in retaliation for opposing "any practice made an unlawful employment practice by this subchapter" or for "charg[ing], testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).  Retaliation claims brought under NRS § 613.340 are analyzed under the same principles as Title VII retaliation claims. *See Pope*, 114 P.3d at 281-82.[3]

---

[2] Greystar concedes Miles alleges elements one and four. ECF No. 41 at 9 ("Plaintiff pleads she is a female and Greystar treated her less favorably than her male counterparts . . . ."). Miles also sufficiently alleges elements two and three. ECF No. 37 at 12 (alleging Miles "was never written up or had any complaints about her work but the company proceed[ed] to terminate her anyway").

[3] The parties also do not separately analyze Miles' retaliation claim under federal and state law.

To make out a prima facie retaliation case, a plaintiff must allege that (1) she "engaged in protected activity," (2) "she suffered a materially adverse action," and (3) "there was a causal relationship between the two." *Westendorf v. W. Coast Contractors of Nev., Inc.*, 712 F.3d 417, 422 (9th Cir. 2013). "An employee engages in protected activity when she opposes an employment practice that either violates Title VII or that the employee reasonably believes violates that law." *Id.* An adverse employment action means "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1242-43 (9th Cir. 2000) (quotation omitted). The causal link element can "be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987); *see Ray*, 217 F.3d at 1244.

Greystar argues Miles fails to allege she engaged in a protected activity because her complaints to the Tesoro Ranch property managers would not make a "reasonable person . . . believe that the conduct complained of violates Title VII." ECF No. 41 at 10-11 (quoting *Wowo v. ITS Logistics, LLC*, No. 3:24-cv-00061-ART-CSD, 2025 WL 275518, at *2 (D. Nev. Jan. 23, 2025)). I disagree. Miles alleges she made four separate complaints to her managers. ECF No. 37 at 7-9. For each of these complaints, she alleges who she made the complaint to and what the subject of the complaint was. Both the number of alleged complaints about Little and the allegations in the complaints would put a reasonable person on notice of unlawful activity under Title VII. Specifically, Miles alleges she first complained to Greystar managers that "she did not feel safe around Arnold, she felt harassed by the way he looked at her and she did not want to work with him." *Id.* at 7. Her later complaints "again raised her concerns to Soriento and

8

Malachi and [she] specifically said she didn't want Arnold Little to be in her apartment," asked the property managers "to keep [Little] away from her," provided Kylie's report of "stalking," and "asked again not to work with Arnold and not to let him in her apartment." *Id.* at 7-9.  And all this occurred where Miles and Little both worked and lived. *Id.* at 4, 6.

Greystar also contends Miles does not "identify when she lodged her alleged complaints or in what medium." ECF No. 41 at 11.  The authority Greystar relies on does not require a plaintiff to allege the medium in which she made her complaints. *See Lee v. Foothill-De Anza Cmty. Coll. Dist.*, 733 F. Supp. 3d 815, 829-30 (N.D. Cal. 2024).  The *Lee* court dismissed the plaintiff's retaliation claim because her complaint did not specify which grievances and complaints were used to retaliate against her. *Id.* at 830.  Miles alleges the four complaints which form the basis of her retaliation claim, as well as the general content of those complaints and approximate dates they were made.  Thus, Miles sufficiently pleads facts I can use to "evaluate the potential causal connection between th[e] complaint[s] and the adverse action." *Id.*

Greystar's argument that Miles does not allege a causal connection between her protected activity and adverse action similarly fails.  The entire series of events here happened over the course of only six months, and it was less than a month between Miles' final complaint and her termination. ECF No. 37 at 8-10.  This timing, alone, is sufficient to support a causal nexus. *See Yartzoff*, 809 F.2d at 1376 (finding a causal link where the plaintiff's job duties were transferred away less than three months after he filed his complaint and his supervisors issued him a negative performance review three weeks after meeting to discuss the complaint); *Ray*, 217 F.3d at 1239, 1244 (finding a causal link where the plaintiff filed EEOC complaints one and two months before the adverse action).  Moreover, Miles' allegations that Malachi and Bettis "mocked Kylie" and "stonewalled" her inquiries about Little support a causal nexus between

Miles' similar complaints to the same supervisors and her termination. ECF No. 37 at 8. Miles sufficiently alleges a causal nexus between her protected activity and termination. For these reasons, I deny Greystar's motion to dismiss the retaliation claim.

### 3. Miles' negligent supervision claim is preempted and therefore cannot proceed.[4]

Greystar contends this claim is preempted by Miles' statutory remedies. ECF No. 41 at 13-14; *see Doe v. Wynn Resorts, Ltd.*, No.: 2:19-cv-01904-GMN-VCF, 2023 WL 1782439, at *18 (D. Nev. Feb. 3, 2023). Miles fails to respond to this argument, so under Local Rule 7-2(d) she has effectively conceded that I should agree with Greystar and dismiss it.

### 4. The wrongful termination claim fails because Miles has an adequate statutory remedy.

Greystar contends that (1) this tort claim is also preempted because an adequate statutory remedy exists and (2) Miles fails to allege a public policy violation. Miles responds that she should be able to plead this claim in the alternative and that her complaints to Greystar supervisors about Little's harassment was in the public interest.

To establish a wrongful termination claim under Nevada law, the plaintiff must allege that the defendant terminated her for "refusing to engage in conduct that was violative of public policy" or because she engaged "in conduct which public policy favors." *Bigelow v. Bullard*, 901 P.2d 630, 632 (Nev. 1995). However, the Supreme Court of Nevada does "not recognize an action for tortious discharge when a plaintiff has an adequate, comprehensive, statutory remedy." *Ozawa v. Vision Airlines, Inc.*, 216 P.3d 788, 791 (Nev. 2009).

---

[4] Despite the styling in her complaint, Miles clarifies in her opposition that this claim is brought only for negligent supervision. ECF No. 44 at 12.

Miles' wrongful termination claim appears to be entirely based on Greystar's alleged retaliation for her complaints about Little's harassment. ECF No. 37 at 23 (alleging Greystar terminated Miles "in order to silence her pointing out the sexual harassment ongoing at Tesoro Ranch"); ECF No. 44 at 13 (arguing "Miles' advocacy to stop Arnold Little [from] harassing women" was in the public interest). She has a statutory remedy under the retaliation provisions of 42 U.S.C. § 2000e-3 and NRS § 613.340. *See Ozawa*, 216 P.3d at 791; *Allen v. Vocatus, LLC*, 645 F. Supp. 3d 1037, 1048-49 (D. Nev. 2022). Miles' wrongful termination and retaliation claims are based on the same allegations. She sufficiently pleads her retaliation claim, and I have denied the motion to dismiss that claim, so her wrongful termination claim is preempted and I dismiss it.[5] I grant Miles leave to amend this claim if she can allege facts that distinguish it from her retaliation claim. Because I dismiss this claim as preempted, I express no view on whether Miles sufficiently alleges Greystar terminated her for "engaging in conduct which public policy favors." *Bigelow*, 901 P.2d at 632.

### 5. I deny Greystar's motion to dismiss the hostile work environment claim.

Greystar argues this claim should be dismissed because (1) no actionable harassment occurred within the statutory limitation period, (2) Miles fails to allege severe or pervasive conduct that altered the conditions of her work environment, and (3) she does not adequately allege Greystar's liability for Little's actions. Miles responds that this claim is timely because her termination and subsequent communications with human resources occurred during the statutory limitation period. She argues Little's actions were physically threatening and

---

[5] Miles cites no authority for her proposition that her wrongful termination claim "cannot be denied" if pleaded in the alternative. ECF No. 44 at 14.

humiliating and that Greystar, through the Tesoro Ranch property managers, knew of the harassment.

Title VII's prohibition on employment discrimination "includes a prohibition against the creation of a hostile work environment." *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 686 (9th Cir. 2017).[6]  To state a hostile work environment claim, the plaintiff must plausibly allege (1) that she "was subjected to verbal or physical conduct" based on a protected category; (2) "that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Id.* (quotation omitted).  In assessing whether conduct is "severe or pervasive," I consider the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008) (quotation omitted).  An employer is liable if it knew, or should have known, about the employee's harassment and failed to stop it. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759 (1998).

Viewing the alleged facts in the light most favorable to Miles, she has plausibly alleged that Little's conduct was severe or pervasive.  His comments[7] move the needle towards humiliating, and his text after entering Miles' home without her knowledge certainly crosses the line from a "mere offensive utterance" to "physically threatening or humiliating." *Id.* (quotation omitted).  Miles sufficiently alleges severe or pervasive conduct that altered the conditions of her work environment because Little continued to have a key to Miles' apartment, he expressed a

---

[6] As previously explained, NRS § 613.330 discrimination claims are analyzed under the same principles as Title VII claims. *Pope*, 114 P.3d at 280.

[7] "Your body is so banging, OMG." ECF No. 37 at 7.

12

sexual interest in her, and Greystar had taken no action against Little after Miles' previous complaints to her supervisors. Additionally, Miles sufficiently alleges the Tesoro Ranch property managers knew, or should have known, of Little's harassment based on Miles' complaints.

Both parties agree Miles needed to file a charge of discrimination with the Nevada Equal Rights Commission (NERC) within 300 days of the alleged discrimination. NRS § 233.160(1)(b). Both parties also agree Miles filed a charge of discrimination with NERC on April 1, 2024, so the cutoff for conduct on which she can base her claim is June 6, 2023. ECF Nos. 41 at 18; 44 at 14. Miles argues her June 9, 2023 termination and subsequent communications with human resources were part of the employment harassment she faced. Thus, Miles argues that the continuing violation doctrine makes her hostile work environment claims timely. *See Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1107 (9th Cir. 1998) (recognizing that, under the continuing violation doctrine, "events occurring outside the limitations period may be considered as a basis for the claim so long as those events are part of an ongoing unlawful employment practice").

Miles' complaint sufficiently pleads facts such that it is at least plausible she faced "day-to-day harassment" until her termination. *Id.* at 1108 (explaining the plaintiff "testified that she was subject to the same sort of harassment by [the perpetrator] on a regular basis, and that she constantly felt uncomfortable and upset at work"). Miles alleges she not only worked with Little but that she lived in the same apartment complex as him and that he had a key to her apartment. His sexual advances and the "protection afforded by management" of his conduct made Miles "fearful for her safety" both at her home and workplace. ECF No. 37 at 9, 12. As such, it is at least plausible that by June 2023 Miles faced a hostile work environment every day she was at

13

work. *See Draper*, 147 F.3d at 1108-09.  Therefore, I deny the motion to dismiss this claim as Miles sufficiently alleges a hostile work environment on June 6, 2023 through June 9, 2023.[8]

<u>6.  I dismiss Miles' IIED claim because she fails to allege severe or extreme emotional distress.</u>

Greystar contends Miles' IIED claim fails because it is preempted and she does not allege extreme and outrageous conduct or severe emotional distress.  Miles responds that her statutory and IIED claims can coexist and that she sufficiently alleges extreme and outrageous conduct by Greystar and her severe emotional distress.

To state a plausible IIED claim, Miles must allege "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress; (2) severe or extreme emotional distress suffered by the plaintiff; and (3) actual or proximate causation." *Jordan v. State ex rel. Dep't of Motor Vehicles and Pub. Safety*, 110 P.3d 30, 52 (Nev. 2005) (en banc), *abrogated on other grounds by Buzz Stew, LLC v. City of N. Las Vegas*, 181 P.3d 670 (Nev. 2008) (en banc).  I make the initial determination as to whether a reasonable jury could find conduct to be extreme and outrageous. *See Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993) (citing Restatement (Second) of Torts § 46 cmts. h, j) ("[W]hether defendants['] conduct may reasonably be regarded as so extreme and outrageous as to permit recovery are questions for the Court to answer.").  Extreme and outrageous conduct "is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (simplified).

---

[8] My ruling is limited to the alleged hostile work environment Miles faced on these dates.  As the parties have not argued the issue of day-to-day harassment, I make no ruling on whether, under the continuing violation doctrine, Miles' earlier allegations of harassment are actionable because of the daily harassment she faced between June 6, 2023 and June 9, 2023.

IIED liability "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Welder v. Univ. of S. Nev.*, 833 F. Supp. 2d 1240, 1246 (D. Nev. 2011) (simplified).  Termination of an employee, "even in the context of a discriminatory [employee] policy, does not in itself amount to extreme and outrageous conduct actionable under an [IIED] theory." *Hirschhorn v. Sizzler Rests. Intern., Inc.*, 913 F. Supp. 1393, 1401 (D. Nev. 1995) (internal quotations and citations omitted).

Furthermore, "in cases where emotional distress damages are not secondary to physical injuries, but rather, precipitate physical symptoms, either a physical impact must have occurred or, in the absence of a physical impact, proof of serious emotional distress causing physical injury or illness must be presented." *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387 (Nev. 1998) (simplified).  The physical impact requirement may not be satisfied by pleading "general physical or emotional discomfort." *Chowdhry v. NLVH, Inc.*, 851 P.2d 459, 483 (Nev. 1993); *see also Kennedy v. Carriage Cemetery Servs., Inc.*, 727 F. Supp. 2d 925, 933 (D. Nev. 2010) (finding that insomnia, nightmares, general nervousness, and "a purely emotionally upsetting situation" are insufficient to support an IIED claim under Nevada law, and explaining that objectively verifiable evidence, like a need for "psychiatric assistance or medication," are necessary to meet the physical manifestation requirement).  Nevada uses a sliding scale approach. *Franchise Tax Bd. of Cal. v. Hyatt*, 335 P.3d 125, 148 (Nev. 2014) (en banc), *overruled on other grounds by Franchise Tax Bd. of Cal. v. Hyatt*, 578 U.S. 171 (2016).  When the alleged conduct is less extreme, the plaintiff must allege more objectively verifiable indicia of distress and vice versa. *Id.*  There is no requirement that a plaintiff must allege a medical diagnosis or be prescribed medication. *Id.*  Other objectively verifiable indicia, such as

allegations of behavioral changes, may suffice if the alleged conduct is on the more extreme end of the scale. *Id.* at 148-49.

Miles fails to adequately allege severe or extreme emotional distress.  Her claim that "Greystar . . . intended to cause Plaintiffs severe emotional distress" speaks to Greystar's actions and not her own emotional distress. ECF No. 37 at 24.  And even if she was describing her own emotional distress, this allegation is purely conclusory and therefore insufficient.  Miles also claims Greystar "jeopardized her well-being, mental stability, and peace of mind." *Id.* at 25. These descriptions are akin to "general physical or emotional discomfort" and therefore fail to plead the required objectively verifiable indicia of distress. *Chowdhry*, 851 P.2d at 483.  And whether Greystar jeopardized Miles' emotional well-being is not what matters; Miles must actually plead emotional distress.  Miles comes closest to pleading the requisite emotional distress when she says she "has suffered and continues to suffer anguish and emotional distress that has manifested itself in various ways." ECF No. 37 at 25.  But again, this is insufficient because Miles fails to allege any physical symptoms resulting from the emotional distress. *Barmettler*, 956 P.2d at 1387.  While I am dismissing her IIED claim, I grant Miles leave to amend this claim if she can allege the "various ways" her emotional distress has manifested itself.

**B.  I deny the motion to compel arbitration.**

The FAA "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008).  Section 2 of the FAA provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in [the EFAA]." 9 U.S.C. § 2.  A party seeking to compel arbitration "has the burden

16

under the FAA to show (1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). "Although the party seeking to enforce an arbitration clause bears the burden of proving the clause's valid existence, any party opposing arbitration must establish a defense to enforcement." *Gonski v. Second Jud. Dist. Ct. of State ex rel. Washoe*, 245 P.3d 1164, 1169 (Nev. 2010), *overruled on other grounds by U.S. Home Corp. v. Michael Ballesteros Tr.*, 415 P.3d 32 (Nev. 2018) (en banc). A "party seeking to avoid enforcement of an arbitration agreement can only invoke a defense that would be available to a party seeking to avoid the enforcement of any contract," and cannot rely on "a defense that is only applicable to arbitration agreements." *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010 (9th Cir. 2005).

I determine if an arbitration agreement is valid by applying "ordinary state-law principles that govern the formation of contracts." *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 680 (9th Cir. 2024) (quotation omitted). Nevada has a "fundamental policy favoring the enforceability of arbitration agreements," and it "liberally construe[s] arbitration clauses in favor of granting arbitration." *Uber Techs., Inc. v. Royz*, 517 P.3d 905, 908 (Nev. 2022) (en banc) (quotation omitted).

Greystar moves to compel arbitration, arguing the arbitration agreement Miles signed is valid, governed by the FAA, and encompasses her wage and hour claims. The arbitration agreement includes a joint action waiver, which states "[t]he Parties agree that all claims must be pursued on an individual basis only. By signing this Agreement, you waive your right to commence, or be a party to, any class, representative or collective claims or to bring jointly with any other person any claim against the Company." ECF No. 41-1 at 6. Miles challenges the

17

validity of the joint action waiver on several grounds. Her only challenge to the entire arbitration agreement is that the EFAA excludes her case from arbitration.

On January 18, 2023 Miles signed Greystar's arbitration agreement. *Id.* at 10. It states it is governed by the FAA and that Miles and Greystar "agree to arbitrate all legal disputes between [them] as described below instead of litigating such disputes in court and in front of a jury." *Id.* at 4. Greystar has shown the existence of a valid arbitration agreement and Miles does not dispute that it encompasses her wage and hour claims. I begin by addressing Miles' arguments about the validity of the joint action waiver and then address whether the arbitration agreement is enforceable under the EFAA.

### 1. The joint action waiver in the arbitration agreement is valid.

Miles argues the joint action waiver is invalid because it (1) violates Greystar's duty of good faith and fair dealing inherent in every contract, (2) is unconscionable, and (3) makes effective vindication of a federal right impossible.

Challenges to the validity of an arbitration agreement come in two forms: "[o]ne type challenges specifically the validity of the agreement to arbitrate" while "[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement . . . or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006). "Challenges to the contract's validity are considered by the arbitrator in the first instance." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008). But if "the crux of the complaint" attacks the arbitration provision itself, then I "must decide whether the arbitration provision is invalid and unenforceable." *Id.* (simplified).

Here, the arbitration agreement states that "[a]ny issue concerning the validity or enforceability of the class/collective action waiver must be decided by a court of law." ECF No. 41-1 at 6. Even without this express contractual language, the validity of the joint action waiver in the arbitration agreement is the crux of the dispute, so I will decide these questions.

None of Miles' three arguments supports invalidating the joint action waiver. First, I am unpersuaded by Miles' argument that Greystar breached its duty of good faith and fair dealing. Nevada law implies a covenant of good faith and fair dealing in every contract. *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922-23 (Nev. 1991). A breach of the implied covenant of good faith and fair dealing occurs "[w]here the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract." *Id*. To plead a breach of the implied covenant of good faith and fair dealing, a plaintiff must allege: "(1) the existence of a contract between the parties; (2) that defendant breached its duty of good faith and fair dealing by acting in a manner unfaithful to the purpose of the contract; and (3) the plaintiff's justified expectations under the contract were denied." *Shaw v. CitiMortgage, Inc.*, 201 F. Supp. 3d 1222, 1251 (D. Nev. 2016).

I fail to see how Greystar acted unfaithfully to the purpose of a contract titled "Mutual Agreement to Arbitrate Claims" by compelling arbitration. ECF No. 41-1 at 4. Additionally, Miles has not explained how Greystar acted unfaithfully to the joint action waiver or how her justified expectations under the waiver were denied. Miles makes several policy arguments about arbitration, but these are unrelated to whether Greystar acted unfaithfully to the purpose of the class waiver. *See* ECF No. 44 at 16-17 & n.5. Miles also offers policy arguments about arbitration for why her justified expectations were denied, citing a California appellate court

19

decision for why arbitration provides an "inferior forum" for employees.[9] *Id.* at 17-18.  Again, I fail to see how any inferiority of arbitration relates to Miles' justified expectations of the class waiver.

I am also not convinced that the class waiver is unconscionable.  Under Nevada law, an arbitration agreement is unconscionable only if it is both procedurally and substantively unconscionable. *Tough Turtle Turf, LLC v. Scott*, 537 P.3d 883, 885 (Nev. 2023).  A contract clause is procedurally unconscionable if "a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract." *Id.* (quotation omitted).

Miles argues she had "little time to consider the agreement," citing the one minute and seventeen seconds she took to review the arbitration agreement. ECF Nos. 44 at 18-19; 44-1 at 4. But the fact that Miles reviewed the document quickly does not mean she lacked a meaningful opportunity to review it.  Even a cursory review of the arbitration agreement confirms that it is well-labeled, easy to see, bolded, underlined, and uses headings. ECF No. 41-1 at 4-10.  The fact that Miles reviewed it quickly does not make it procedurally unconscionable.  Because Greystar's class waiver is not procedurally unconscionable, I need not address whether it is substantively unconscionable.

Miles' final argument that the joint action waiver makes vindication of a federal right impossible similarly fails because the Supreme Court has "rejected efforts to conjure conflicts

_____

[9] The facts in that case were significantly different. *See Mercuro v. Superior Ct.*, 116 Cal. Rptr. 2d 671, 678-79 (Cal. Ct. App. 2002).  There, under an unconscionability analysis, the court noted that the arbitration agreement's structure made only eight arbitrators available. *Id.* at 678.  That created a "repeat player effect," which is not apparent here. *Id.* at 678-79 (quotation omitted).

between the [FAA] and other federal statutes." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 516 (2018).  Miles is not clear what federal right is impossible to vindicate under the joint action waiver, referring to both "rights under the Norris-Laguardia Act" and "the right to bring a collective action under the FLSA." ECF No. 44 at 20.  Either way, Miles' argument fails under *Epic*.  The *Epic* plaintiffs argued that their arbitration agreements were unlawful under the National Labor Relations Act (NLRA), which protects the right to organize unions and bargain collectively. *Epic*, 584 U.S. at 510-11.  The Supreme Court rejected this argument, finding no conflict with the FAA because the NLRA does not "express approval or disapproval of arbitration," "mention class or collective action procedures," or "even hint at a wish to displace the Arbitration Act." *Id.* at 511.  The Norris-LaGuardia Act, "a precursor of the NLRA," has the "same policy the NLRA advances" and "does not conflict with Congress's statutory directions favoring arbitration." *Id.* at 516.[10]  The Supreme Court noted that the *Epic* plaintiffs chose not to argue that the FLSA—under which the plaintiffs brought their claims and permits collective actions—overcomes the FAA to permit class and collective actions, likely because the Supreme Court already held "that an identical collective action scheme" under the Age Discrimination in Employment Act did not displace the FAA. *Id.* at 514-15.  *Epic* forecloses Miles' argument that the joint action waiver makes vindication of a federal right impossible.

Miles has not met her burden to establish a defense to enforcement of the joint action waiver in the arbitration agreement.  Thus, the class and collective action waiver is valid.

---

[10] The text of the NLRA and Norris-Laguardia Act are similar. *Compare* 29 U.S.C. § 157, *with* 29 U.S.C. § 102 (both are "for the purpose of collective bargaining or other mutual aid or protection").  The Supreme Court rejected this language as a basis for finding a conflict with the FAA. *Epic*, 584 U.S. at 512.

21

### 2. The EFAA precludes arbitration of Miles' case but questions remain about her proposed joint action.

Miles argues that the EFAA precludes arbitration of her case and enforcement of her class action waiver. Greystar contends that her wage and hour claims are unrelated to her sexual harassment dispute under the EFAA, so the wage and hour claims should be sent to arbitration.

In 2022, Congress amended the FAA to give plaintiffs alleging sexual harassment or sexual assault the ability to opt their case out of a predispute arbitration agreement. The EFAA provides:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. § 402(a). A "sexual harassment dispute" is "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." *Id.* § 401(4). The question of the EFAA's applicability is reserved for the court. *Id.* § 402(b) (the EFAA's applicability "shall be determined [under federal law] by a court, rather than an arbitrator, irrespective of whether the party resisting arbitration challenges the arbitration agreement specifically or in conjunction with other terms of the contract containing such agreement, and irrespective of whether the agreement purports to delegate such determinations to an arbitrator"); *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 583 (S.D.N.Y. 2023).

Greystar first argues the EFAA does not apply because Miles' hostile work environment claim should be dismissed and thus she cannot allege a "sexual harassment dispute." 9 U.S.C.

§ 402(a).  However, I am denying the motion to dismiss Miles' hostile work environment claim, so I reject Greystar's argument and find that Miles has properly invoked the EFAA.

Greystar next contends Miles' claims that are unrelated to her sexual harassment dispute should be sent to arbitration.  But § 402(a) states that no predispute arbitration agreement shall be enforceable "with respect to a case" filed under federal or state law.  *See Johnson v. Everyrealm*, 657 F. Supp. 3d 535, 558-60 (S.D.N.Y. 2023) (explaining that "case" means "the legal proceeding as an undivided whole" and that Congress's use of "claim" in other parts of the statute shows it was "presumed to have been sensitive to the distinct meanings" of case and claim).  Most district courts considering this question have rejected Greystar's argument and kept the plaintiff's entire case in court.[11]

Greystar relies on a magistrate judge's order in *Mera v. SA Hosp. Grp., LLC*, 675 F. Supp. 3d 442 (S.D.N.Y. 2023), to support its argument that Miles' wage and hour claims should be sent to arbitration.  But after the parties here submitted their motions, that order was

---

[11] *Ding v. Structure Therapeutics, Inc.*, 755 F. Supp. 3d 1200, 1218-19 (N.D. Cal. 2024) (holding that a complaint with "at least one EFAA covered claim" makes the arbitration agreement "invalid as to the whole 'case' to the extent the claims relate to the EFAA-covered dispute"); *Turner v. Tesla, Inc.*, 686 F. Supp. 3d 917, 925 (N.D. Cal. 2023) (holding the EFAA makes the arbitration agreement unenforceable "with respect to [the plaintiff's] entire case because the core of her case alleges 'conduct constituting a sexual harassment dispute' as defined by the EFAA"); *Lambert v. New Start Cap. LLC*, 799 F. Supp. 3d 258, 281-82 (S.D.N.Y. 2025) (applying the EFAA to the plaintiffs' wage and hour claims because "if the EFAA is properly invoked," the predispute arbitration agreement is "invalid and unenforceable with respect to the plaintiff's entire case" (simplified)); *Mera v. SA Hosp. Grp., LLC*, No. 23-cv-3492-PGG-SDA, 2025 WL 3202080, at *10 (S.D.N.Y. Nov. 17, 2025) ("[W]here . . . the EFAA is properly invoked and applies, a pre-dispute arbitration agreement is invalid and unenforceable as to the plaintiff's entire case, and not just to plaintiff's sexual harassment claims."); *Diaz-Roa v. Hermes L., P.C.*, 757 F. Supp. 3d 498, 532 (S.D.N.Y. 2024) ("[I]f the EFAA is properly invoked and applies, the pre-arbitration agreement is invalid and unenforceable with respect to the entire case."); *Johnson*, 657 F. Supp. 3d at 561 (holding that "where a claim in a case alleges 'conduct constituting a sexual harassment dispute,'" the EFAA "makes pre-dispute arbitration agreements unenforceable with respect to the entire case relating to that dispute").

reversed by the district judge. *Mera v. SA Hosp. Grp., LLC*, No. 23-cv-3492-PGG-SDA, 2025 WL 3202080, at *10 (S.D.N.Y. Nov. 17, 2025). The magistrate judge originally sent the plaintiff's wage and hour claims to arbitration because they "do not relate in any way to the sexual harassment dispute." *Mera*, 675 F. Supp. 3d at 448. The district judge reversed this decision because when "the EFAA is properly invoked and applies, a pre-dispute arbitration agreement is invalid and unenforceable as to the plaintiff's entire case, and not just to plaintiff's sexual harassment claims." *Mera*, 2025 WL 3202080, at *10. I agree with the district judge's decision, as well as the others that have refused to send only parts of a case to arbitration. Therefore, I will not send Miles' wage and hour claims to arbitration as she "alleg[es] conduct constituting a sexual harassment dispute" and her "case" is filed under federal and state law and "relates to the . . . sexual harassment dispute." 9 U.S.C. § 402(a).

If Miles alleged only individual claims, the analysis would end here. However, Miles brings her wage and hour claims on behalf of a class and FLSA collective.[12] Importantly, Miles does not propose to represent a class alleging a sexual harassment dispute, so she does not invoke the "named representative" clause of § 402(a).[13] The court in *Lambert v. New Start Cap.*

---

[12] Other courts, not faced with the same procedural posture, have recognized the importance of this fact. *Turner*, 686 F. Supp. 3d at 925-26 ("Plaintiff's wage and hour claims in *Mera* were brought on behalf of 'all non-exempt employees . . . .' In contrast, Turner's workplace injury and wage claims relate only to her own experience and employment at Tesla." (simplified)); *Liu v. Miniso Depot CA, Inc.*, 326 Cal. Rptr. 3d 286, 296 n.8 (Cal. Ct. App. 2024) ("The *Mera* case is also factually distinguishable to the extent the plaintiff there sought to assert claims on behalf of a class or otherwise sought relief on behalf of others. In this case Liu asserts only claims on her own behalf."); *Doe v. Second St. Corp.*, 326 Cal. Rptr. 3d 42, 60 (Cal. Ct. App. 2024) ("Here, . . . the 'case' unquestionably 'relates to' the sexual harassment dispute because all of the causes of action are asserted by the same plaintiff, against the same defendants, and arise out of plaintiff's employment . . . .").

[13] Section 402(a) may be invoked by a "person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct."

*LLC*[14] cogently summarizes the problem that arises when a plaintiff alleges both an individual sexual harassment claim and class wage and hour claims and argues that the EFAA invalidates any predispute arbitration agreement or joint action waiver:

> The issue here is one of statutory interpretation: does the "case" to which the EFAA applies mean the entire proceeding—including the claims of all plaintiffs regardless of whether the claims relate to sexual assault or sexual harassment—or does it mean the case filed by the plaintiff(s) alleging conduct constituting a sexual assault or sexual harassment dispute?

799 F. Supp. 3d 258, 282 (S.D.N.Y. 2025).  The *Lambert* court explains:

> A contrary reading of the statute [from limiting its scope to the case of the person alleging sexual harassment] would incentivize plaintiffs, particularly collective or class action plaintiffs, with claims wholly unrelated to sexual assault or sexual harassment, to find someone who could toss in an allegation of inappropriate conduct sufficient to pass the EFAA pleading hurdle.  This super-plaintiff would then shield the entire action and all the other plaintiffs, none of whom themselves faced any sexual harassment or themselves state a claim relating to sexual harassment, from the arbitration provisions to which they assented.  The effect of such an overly broad reading of the EFAA would be to severely limit the FAA and vitiate the liberal federal policy favoring arbitration.

*Id.* at 285-86 (simplified).

The *Lambert* court recognized that "the text of the EFAA supports the conclusion that an individual plaintiff cannot unilaterally void the arbitration agreements entered into by others" and that "[t]he EFAA's legislative history only supports the view that its scope should be limited to the case of the person or class alleging conduct constituting a sexual harassment or sexual assault dispute." *Id.* at 283-84.  Before I decide whether I agree with the reasoning in *Lambert*, I am inclined to give the parties an opportunity to brief this issue.[15]

---

[14] The parties did not have the benefit of this ruling when they briefed the motions.

[15] *Mera* is the only case the parties have presented that involved an individual sexual harassment claim and class wage and hour claims.  There, the court noted "the parties have not briefed the issue of whether other plaintiffs would be able to avoid an arbitration agreement because of [the plaintiff's] sexual harassment claims." *Mera*, 2025 WL 3202080, at *9 n.6.

The *Lambert* court declined to address whether a putative named plaintiff of an FLSA collective action and state labor law class action may elect to void the arbitration agreements and joint action waivers of the class members because "no collective or class ha[d] been certified." *Id.* at 283 n.8. I am unlikely to delay ruling on this issue until class certification because I must determine whether to certify the class action "[a]t an early practicable time." Fed. R. Civ. P. 23(c)(1)(A); *see Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939-40 (9th Cir. 2009). Additionally, plaintiffs can opt-in to Miles' proposed FLSA collective at any time. 29 U.S.C. § 216(b). The currently proposed class and collective do not assert a sexual harassment dispute. If the EFAA does not protect the class and collective members, I would be inclined to strike the class and collective allegations before FLSA collective plaintiffs join this action.

Thus, I order the parties to file additional briefs on the following question: whether Miles may proceed with a joint action that does not allege a sexual harassment dispute.

## C. I deny Greystar's motion to strike class allegations.

Greystar requests that I strike Miles' class definitions because of grammatical confusion and an overbroad definition that fails to distinguish between discretionary and non-discretionary bonuses.[16] Miles responds that this issue is better left for class certification.

A class may be certified if the district court "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Ninth Circuit recognizes that "often the pleadings alone will not resolve the question of class certification and that some discovery

---

[16] Miles' class definition includes "[a]ll non-exempt workers . . . who were paid both bonuses, and/or housing benefit." ECF No. 37 at 14. Her FLSA collective action includes "[a]ll non-exempt workers . . . who received a housing benefit and/or bonus." *Id.*

will be warranted." *Vinole*, 571 F.3d at 942. But nothing in Rule 23(c)(1)(A) prohibits a defendant from seeking an early resolution of questions of class certification. *Id.* at 939-40 ("Nothing in the plain language of Rule 23(c)(1)(A) either vests plaintiffs with the exclusive right to put the class certification issue before the district court or prohibits a defendant from seeking early resolution of the class certification question. The only requirement is that the certification question be resolved 'at an early practicable time.'" (simplified)). I may "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

Greystar's request to strike the class allegations under Rule 12(f) is more appropriately addressed at class certification.[17] Greystar's issue with Miles using "both" and "and/or" in the class action class definition will not affect discovery.[18] And even if I agree with Greystar that the generic use of "bonus" is overbroad, discovery will still be necessary to resolve class certification. Regardless of whether Miles' class definitions used "non-discretionary bonuses" instead of just "bonuses," discovery is needed to determine what bonuses Greystar paid and whether those bonuses were non-discretionary. A change to the class definition now will not alleviate Greystar's concern of ensuring the class definition encompasses only employees who were paid non-discretionary bonuses. As this issue is better left until class certification, I deny Greystar's motion to strike the class allegations.

---

[17] This issue may become moot after the parties' supplemental briefing and resolution of the EFAA joint action issue.

[18] This appears to be a typographical error because the FLSA collective definition does not contain "both" and uses only "and/or." *See* ECF No. 37 at 14. Still, "and/or" is confusing and Miles should specify which one she means, or whether she means "workers who received a bonus, housing stipend, or both."

**D.  I deny the motion to strike Rachel Mariner's declaration.**

Greystar moves to strike the declaration of Miles' attorney, Rachel Mariner, that was attached to Miles' opposition to Greystar's motion to dismiss.  Greystar argues Mariner has no personal knowledge of Greystar's employment practices or Miles' onboarding.  Miles counters that Mariner's personal knowledge is based on a review of Miles' employment documents.

"A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602.  A review of files and records may be sufficient to establish personal knowledge. *Wash. Cent. R. Co. v. Nat'l Mediation Bd.*, 830 F. Supp. 1343, 1353 (E.D. Wash. 1993); *see also Laurant Beverly Hills v. Ford Motor Co.*, 108 F.3d 338, 1996 WL 733188, at *3 (9th Cir. 1996); *Vote v. United States*, 753 F. Supp. 866, 868 (D. Nev. 1990), *aff'd*, 930 F.2d 31 (9th Cir. 1991).

Mariner has provided the basis for her personal knowledge: her review of Miles' employment record. ECF No. 44-1 at 2.  This is sufficient to establish personal knowledge of the attached documents, and Greystar does not object to the attached exhibits being on the record.  And I will not strike the declaration when it does not contain any argument, a fact which Greystar admits. ECF No. 49 at 6.  Paragraphs four through six of Mariner's declaration are problematic because they make factual assertions she gleaned only through reviewing the documents.  She should have let the attached exhibits speak for themselves.  However, this is not a reason to disregard the entire declaration. *See Allbaugh v. Cal. Field Ironworkers Pension Tr.*, No. 2:12-cv-00561-JAD, 2014 WL 2112934, at *7 (D. Nev. May 20, 2014).[19]

---

[19] Greystar has not identified any facts in Mariner's declaration that conflict with the exhibits. To the extent any facts do conflict with the exhibits, I will disregard the declaration.

I also deny Greystar's request to strike the inferences drawn from the declaration. Attorneys are permitted to make arguments in their pleadings that are nonfrivolous and have a basis in law and fact. Nev. R. Prof. Cond. 3.1; *see also* Fed. R. Civ. P. 11(b).  The inferences Greystar disputes are in the opposition brief (as opposed to the declaration itself), have evidentiary support in the exhibits attached to Mariner's declaration, and are permitted attorney argument.

**III.  CONCLUSION**

I THEREFORE ORDER that Greystar's motion to dismiss **(ECF No. 41) is GRANTED in part.**  I dismiss the negligent supervision, wrongful termination, and IIED claims with leave to amend.  The remaining claims will proceed.

I FURTHER ORDER that Greystar's motion to compel arbitration **(ECF No. 41) is DENIED.**

I FURTHER ORDER the parties to submit supplemental briefing, limited to seven pages, as outlined in this order per the following schedule: (1) the parties' simultaneous briefs are due March 4, 2026; (2) simultaneous response briefs are due March 11, 2026.

I FURTHER ORDER that Greystar's motion to strike class allegations **(ECF No. 41) is DENIED.**

I FURTHER ORDER that Greystar's motion to strike the declaration of Rachel Mariner **(ECF No. 46) is DENIED.**

DATED this 17th day of February, 2026.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE

29